UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RROS, ) | |
| BROOKIE R. MORRISON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:24-cv-00926-TWP-MJD |
| ) | |
| CITY OF INDIANAPOLIS, IN et als., ) | |
| INDIANAPOLIS METROPOLITAN POLICE ) | |
| DEPARTMENT, ) | |
| JOHN DOE I, ) | |
| JOHN DOE II Officer IMPD, ) | |
| ) | |
| Defendants. ) | |

**ENTRY SCREENING COMPLAINT AND NOTICE TO *PRO SE* PLAINTIFFS REGARDING SERVICE OF PROCESS**

On June 3, 2024, *pro se* Plaintiffs Redevelopment Revitalization of the Southside CDC ("RROS") and Brookie R. Morrison ("Morrison") initiated this civil action by filing a fill-in-the-blank Complaint for Violation of Civil Rights against Defendants the City of Indianapolis (the "City"), the Indianapolis Metropolitan Police Department ("IMPD"), and two unknown IMPD officers, John Doe I and John Doe II (together, the "Unnamed IMPD Officers") (collectively, "Defendants") (Dkt. 1). Also on June 3, 2024, Plaintiffs paid the filing fee for bringing this action. This matter is now before the Court for screening.

### I.   DISCUSSION

**A.   Screening**

The Seventh Circuit has explained,

> [D]istrict courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status. 28 U.S.C. § 1915(e)(2)(B); *McGore*, 114 F.3d at 608. The district court may screen the complaint prior to service on the defendants, and must dismiss the complaint if it fails to state a claim. 28 U.S.C. § 1915(e)(2)(B).

*Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999).

District courts have an obligation under 28 U.S.C. § 1915(e)(2)(B) to screen complaints before service on the defendant and must dismiss the complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal under federal pleading standards,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

**B.     Plaintiffs' Complaint**

By their Complaint, *pro se* Plaintiffs bring a civil action under Section 1983 against the City of Indianapolis, the IMPD, and two Unnamed IMPD Officers. The Complaint alleges that the City and IMPD have a policy or practice of stopping vehicles with African American drivers and/or passengers and having those vehicles towed without any legal justification. Morrison alleges she was a victim of this policy or practice and had her vehicle unlawfully towed.

The Complaint specifically alleges that on the afternoon of May 22, 2024, Morrison arrived at a Shell gas station on the southside of Indianapolis to meet a friend (Dkt. 1 at 5). While Morrison was parked, she fell asleep. *Id.* An unidentified person later called 911 to report an unconscious

person in a car, and paramedics responded to the scene. The paramedics asked Morrison several questions and determined that she was alert, sober, and in no need of medical assistance. *Id.* John Doe I also arrived at the gas station. He asked Morrison questions and likewise concluded that Morrison was sane, sober, and in no need of medical assistance. John Doe I nevertheless prohibited Morrison from driving her vehicle. *Id.* Morrison believes she was stopped and prevented from driving her vehicle due to her race. *Id.*

John Doe I then left, and John Doe II arrived. John Doe II confronted Morrison and accused her of "smoking illegal drugs on aluminum foil." *Id.* at 7. Morrison denied these allegations and went into the Shell station to purchase a drink. Morrison then saw a flatbed truck pull into the parking lot and asked John Doe II if her vehicle was being towed. *Id.* John Doe II stated that if Morrison could have someone pick up the vehicle within ten minutes, he would not have the vehicle towed. *Id.* Morrison's friend (who Morrison went to the Shell station to meet) arrived within ten minutes, but John Doe II would not let the friend drive Morrison's vehicle, even though the friend had a valid driver's license. *Id.* John Doe II then had Morrison's vehicle towed. *Id.* at 8.

Morrison and RROS allege that the City and IMPD have a policy or practice of stopping and/or towing "cars driven by or containing minorities." *Id.* The Complaint alleges that Morrison's vehicle was stopped and towed on May 22, 2024, pursuant to this policy and/or practice. The Complaint further alleges that this policy or practice "is of grave concern to the membership of RROS and of RROS itself" because "African Americans make up the large majority of the membership of RROS." *Id.* RROS alleges that it is "currently aware of at least one occasion where African Americans members were stopped, prevented from driving and vehicles towed, without legal justification, by members of the Indianapolis Metropolitan Police Department. RROS believes that these actions and tows were racially motivated." *Id.*

Plaintiffs seek a declaration from the Court that the Defendants' conduct violates U.S.C. § 1981 and Plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution. Plaintiffs also request a permanent injunction enjoining Defendants from stopping or towing "vehicles of the plaintiffs" (presumably Morrison and RROS members) without a lawful reason, as well as compensatory damages, punitive damages, and attorneys' fees. *Id.* at 11.

**C.     Discussion of Amended Complaint**

The Court will first discuss whether RROS may proceed as a *pro se* litigant, before addressing the claims against the Unnamed IMPD Officers, the City, and the IMPD in turn.

**1.    RROS May Not Proceed *Pro Se***

Neither a limited liability company nor a corporation may appear *pro se* in federal court. *See United States v. Hagerman*, 545 F.3d 579, 582 (7th Cir. 2008). Individuals, like Morrison, have a right to proceed *pro se*. 28 U.S.C. § 1654. But corporations, such as RROS, may not proceed *pro se*. *See Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008). Morrison, as a non-attorney, may not represent RROS in this action. *Id.* ("[O]ne pro se litigant cannot represent another."). RROS may not proceed *pro se* on its claims. The Court grants RROS **sixty (60) days** from the date of this Entry to obtain legal counsel to represent its interests. If RROS fails to secure counsel in that time, then RROS's claims will necessarily be dismissed.

**2.    Claims Against the Unnamed IMPD Officers**

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (internal quotation omitted). The Complaint alleges that the Unnamed IMPD Officers, acting under color of state law, prohibited Morrison from driving her vehicle and had the vehicle towed without any legal justification (Dkt. 1 at 5–6). At this preliminary stage,

4

these allegations are sufficient to assert a claim for violation of Morrison's constitutional rights. The Court has not determined that Morrison's claims against the Unnamed IMPD Officers must be dismissed pursuant to § 1915(e), so those claims **shall proceed**. This ruling is without prejudice to the filing of a proper Rule 12 Motion.

However, the Complaint does not allege any interaction between the Unnamed IMPD Officers and RROS or any of its members. The allegations against the Unnamed IMPD Officers relate exclusively to their interaction with Morrison on May 22, 2024. RROS's claims against the Unnamed IMPD Officers are therefore **dismissed**.

### 3. Claims against the City

It is well established that there is no *respondeat superior* liability under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To allege a Section 1983 claim against a municipality under *Monell*, a plaintiff must plead not only that her rights were violated but also that the municipal defendant was the "moving force" behind her constitutional injury. *Id.* at 691–95. The "moving force" requirement is shown through (1) the existence of an express municipal policy that caused the alleged constitutional violation, (2) the person who committed the constitutional violation was a public official with final policymaking authority, or (3) the existence of a pattern, practice, or custom that was so widespread or persistent that it rises to the level of a municipal policy. *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994).

The Complaint alleges that the City and IMPD maintain a policy or practice of stopping vehicles with minority drivers or passengers and towing those vehicles without legal justification (Dkt. 1 at 6–10). Morrison alleges that the Unnamed IMPD Officers unlawfully prohibited her from driving her vehicle and towed the vehicle pursuant to this alleged policy. *Id.* at 8. The Court construes *pro se* pleadings liberally, and "federal courts may not apply a heightened pleading standard—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules

5

of Civil Procedure—in civil rights cases alleging municipal liability." *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). As to Morrison, the Complaint's allegations are sufficient to assert a *Monell* claim. Because the Court has not determined that Morrison's claims against the City must be dismissed pursuant to § 1915(e), those claims **shall proceed**. This ruling is without prejudice to the filing of a proper Rule 12 Motion.

RROS's claims against the City, however, must be dismissed because the Complaint does not adequately allege that RROS has standing. All plaintiffs seeking to invoke federal jurisdiction must have standing. An organization, like RROS, may assert representational standing (also called organizational or associational standing) if (1) the organization's members have standing to sue on their own; (2) the interests the organization seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires individual participation by its members. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Complaint does not allege sufficient facts to satisfy any of these requirements.

First, it does not appear that most, if any, members of RROS would have standing to assert *Monell* claims on their own, since RROS alleges it is only aware of one occasion on which a member was subjected to the alleged policy of stopping and towing vehicles without justification (Dkt. 1 at 8, ¶ 28). RROS's members who were not subjected to this policy would likely not have standing to sue the City. Second, the Complaint does not allege the RROS's purpose or that the interest it seeks to protect in this lawsuit are germane to that purpose. And third, the Section 1983 claims asserted, as well as the compensatory and punitive damages requested, require individual participation by RROS's members. While the City's alleged policy may be of equal concern to all of RROS's African American members, the specific harm suffered by each member whose vehicle was unlawfully stopped and/or towed will vary based on the specific facts and circumstances.

6

"[C]laims for damages are generally 'not common to the entire membership, nor shared by all in equal degree' and therefore require individual proof where the organization itself has suffered no monetary harm." *Brotherhood of Maint. of Way Emps. Div. of Int'l Brotherhood of Teamsters v. Ind. Harbor Belt R.R. Co.*, 20 F. Supp. 3d 686, 691 (N.D. Ind. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 515–16 (1975)). RROS's claims against the City are therefore **dismissed**.

### 4. Claims against the IMPD

Plaintiffs' claims against the IMPD must be dismissed because, as a matter of law, municipal police departments are not suable entities. Whether a municipal police department may be sued is a question of Indiana law. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997). Under Indiana law, a "[m]unicipal corporation" is a "unit, . . . or other separate local governmental entity that may sue and be sued." Ind. Code § 36-1-2-10. A "'[u]nit' means county, municipality, or township," Ind. Code § 36-1-2-23, and a "[m]unicipality" is a "city or town," Ind. Code § 36-1-2-11. The Seventh Circuit Court of Appeals has recognized that Indiana's "statutory scheme does not grant municipal police departments the capacity to sue or be sued." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *McMillian*, 520 U.S. at 786); *see e.g.*, *Ware v. City of Indianapolis*, No. 21-cv-2244, 2021 WL 4895320, at *2–3 (S.D. Ind. Oct. 20, 2021) (granting motion to dismiss claims against Indianapolis Metropolitan Police Department because "[t]he law is clear that the IMPD is not a suable entity"); *Davis v. Reid Hosp. (Heath)*, No. 20-cv-523, 2021 WL 1316017, at *2 (S.D. Ind. Apr. 8, 2021) (granting motion to dismiss claims against Richmond Police Department "because it is not a suable entity").

The only proper municipal defendant is the City, which is already named as a defendant. Accordingly, Plaintiffs' claims against the IMPD are **dismissed**.

7

    **D.**    <u>**Notice Regarding Service of Process**</u>

As of this date, there is no entry on the Court's docket indicating that Plaintiffs have effectuated service upon the City or the Unnamed IMPD Officers. Pursuant to Federal Rule of Civil Procedure 4(c), Plaintiffs are responsible for having the Summons and Complaint served on those Defendants. Because RROS is an unrepresented corporation, the Court directs Morrison to Rule 4 and the other Federal Rules of Civil Procedure. Rule 4(m) explains,

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. Pro. 4(m).

Morrison shall have through **Tuesday, September 3, 2024**,[1] to effectuate service upon the City, John Doe I, and John Doe II. Failure to do so will result in the dismissal of the action without prejudice for failure to prosecute and failure to comply with Court orders.

## II.    CONCLUSION

For the reasons explained above, Plaintiffs claims against the City of Indianapolis, John Doe I, and John Doe II **SHALL PROCEED**. The remaining claims are **DISMISSED**, and the **Clerk is directed** to terminate the IMPD as a party. Morrison shall have through **<u>Tuesday, September 3, 2024</u>**, to effectuate service upon the City, John Doe I, and John Doe II.

RROS is granted **<u>sixty (60) days</u>** from the date of this Entry to obtain legal counsel. If RROS fails to secure counsel within that time, then RROS's claims will necessarily be dismissed,

---

[1] Ninety (90) days after June 3, 2024, when the Complaint was filed, is Sunday, September 1, 2024. The following Monday, September 2, 2024, is Labor Day. 5 U.S.C. § 6103(a). Federal Rule of Civil Procedure 6 provides that when calculating a filing deadline, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. Pro. 6(a)(1). Tuesday, September 3, 2024, is the first non-weekend, non-holiday day following Sunday, September 1, 2023.

and this action will proceed only as to Morrison's claims. If RROS does secure counsel within that time, then RROS, through counsel, and Morrison may file an amended complaint. Any amended complaint must be filed within **fourteen (14) days** after counsel for RROS files his or her Appearance. RROS may not file an amended complaint *pro se*.

Further, the **Clerk is directed** to correct the name of Plaintiff RROS to "Redevelopment Revitalization of the Southside CDC."

**SO ORDERED**.

Date: 6/25/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Redevelopment Revitalization of the Southside CDC
2618 Bethel Avenue
Suite B
Indianapolis, IN 46203

BROOKIE R. MORRISON
5213 Staughton Dr.
Indianapolis, IN 46226